May it please the court, Stephen Brechetto for the Plaintiff, Eva Huntsinger. This is an ERISA case that the U.S. District Court for the District of Oregon dismissed on summary judgment. I'm going to be talking about three, going to try to focus on three primary issues. One, I'd like to talk a little about the issue of the court exceeding the scope of de novo review. Second, I want to talk a little bit about the breach of fiduciary duty claims. Third, I'm going to try to spend some time talking about the bankruptcy issues. In this case, the District Court reached back beyond the scope of judicial review to decide issues that weren't properly before it. Plaintiff filed a claim for life insurance benefits. That claim was initially denied by Unim Provident. In the initial denial, Unim Provident asserted two basis for its denial. One, the application of a suicide exclusion clause, and two, the fact that the policy had been terminated. That decision was appealed, and on appeal, Unim Provident stated one reason for denying Mrs. Huntsinger life insurance benefits. That reason was the policy had terminated. Unim Provident abandoned the issue of the life insurance clause. In the District Court, Unim Providence attorneys attempted to litigate on summary judgment the question of whether the suicide exclusion clause applied to defeat plaintiff's claim. Wasn't that at the direction of the District Court, though? I don't believe that that was at the direction of the District Court judge. I believe the judge permitted it, but Unim Provident filed a motion for summary judgment very early in the case based upon the suicide exclusion clause with respect to the benefit claim and also applying it to other claims. The District Court, at that point in time, granted an FRCP56 motion allowing plaintiff to conduct discovery, and the case proceeded from there to litigate the summary judgment motion of Unim Provident. Throughout that proceeding, plaintiff objected to the court considering issues not raised in the final denial letter and objected to the submission of new evidence to decide the issues that had never been decided in the administrative process. At that point, there was no dispute that De Novo Review applied, correct? There was no dispute that De Novo Review applied. That's correct. All right. So, you know, we know on De Novo Review, the District Court judge has a great deal of discretion, I guess. I'm not quite sure what the word I want to use right there. Right. But to expand the record. As I understand the Ninth Circuit's recent... In fact, they can even conduct a trial to decide. My own reading of the case law would be inconsistent with that. And make findings of fact and conclusions of law. My own reading of the case law... What case are you relying upon that says that that would be improper for a District Court judge to do that? I believe the Ninth Circuit's recent decision that I sent to the court, OPITA versus... Which one? OPITA versus Northwest Airlines Pension Plan. This was a supplemental cite that I submitted last week. In this case, the Ninth Circuit reviewed a benefits decision, and the question was whether new evidence submitted in the District Court was properly before the court. It was an additional testimony in court. In addition to that, the court then offered a videotape of the plaintiff at home doing work inconsistent with her benefits claim. They offered that into the record. They then cross-examined a plaintiff's... An independent physician and got him to change his testimony in court, as it was before the administrative record. The court said that the admission of additional testimony was inappropriate, and they particularly said that the additional testimony and the videographer was irrelevant to determining whether the plan correctly or incorrectly denied benefits based upon the independent doctor's evaluation, which was the only question properly before the District Court. It wasn't the issue. Well, the issue there was extrinsic evidence to interpret the plan, if I remember correctly. It was extrinsic. Which is a different issue altogether from the circumstance here. I don't believe it was extrinsic evidence to interpret a provision in the plan. I believe the evidence was offered to as to the to change the testimony of physicians who'd given reports into the plan. I mean, that's my... I mean, the District Court didn't do that here. I mean... No. The District Court reopened the District Court allowed the defendant to make the administrative record they never made in the claims process. There wasn't any issue of interpreting a plan provision in the denial letter. Rather, the court allowed Unum to come into court to offer evidence that it could have gathered, it should have gathered, in the administrative process as to what a ported or converted individual policy would say, and allowed Unum Provident to gather and offer evidence of things plaintiffs said in other proceedings, none of which was relevant or necessary to determine the issue before the court. Namely, whether or not the policy had terminated and that prevented plaintiff from being entitled to benefits. Our view of the Ninth Circuit decisions is that the decision to offer, to admit additional evidence, is, under OPTA, restricted to limited circumstances. And those limited circumstances are relating to the decision that the District Court is reviewing. Unum Provident is saying that the decision is the whole claim. You know, the whole claim is before the District Court. The District Court can't look at anything. If that's the case, it eliminates, it deprives any meaning of what this court has said are limited circumstances for offering additional evidence. The only reasonable way to interpret what it means to have limited circumstances to offer additional evidence is you've got to look at the decision that was made and then look at the criteria for the kinds of circumstances where additional evidence may be offered. And I've attempted to show how the decisions of this Court in Mongeluzzo, in Thomas, in those cases which discussed it in an over-review are all consistent with that. In OPTA, the Ninth Circuit adopts the limited circumstances the Fourth Circuit articulated in Queazenbury. The District Court never analyzed why it was going to consider additional evidence and never articulated why it was necessary to decide the claim. Rather, it simply concluded that its discretion was broad. And we don't believe that's consistent with the Ninth Circuit's decisions. I've also cited Vizcayeno v. Microsoft recognizing that the, that's not a, that there is no real majority opinion in that case, but five judges in this circuit on an en banc decision approved the concept that a defendant may waive claims by not raising them in the final decision. And we think that that's the applicable analysis that should be made here. I want to talk a little bit about the breach of fiduciary duty claims. The District Court dismissed the breach of fiduciary duty claim on one ground, because of the suicide exclusion clause. But the District Court also concluded that plaintiff's breach of fiduciary duty claim was essentially a claim for monetary compensation, that you can't get monetary compensation on a breach of fiduciary duty claim. The District Court was wrong in two respects. Number one, the breach of fiduciary duty claim was not a claim for monetary compensation. What we were seeking was reinstatement of Mrs. Hunsinger's right to convert and port life insurance benefits to get the policy. And that's different from seeking benefits. We relied upon the Seventh Circuit's decision in Bowerman v. Walmart stores. Bowerman clearly approves the remedy that we were seeking. Bowerman is based upon a Supreme Court decision, Verity Court v. Howe, which approved reinstatement of benefits as a form of individual relief, available under Section 1132A3 of ERISA, and, in our view, the Court clearly erred. Defending it. Practically, how would that remedy have played out? The remedy would have played out in the form of the District Court ordering Unum Provident and Shaw, who we believe is the putative employer here, to issue forms to convert the policy to an individual policy and to port the supplemental life insurance post-termination. Mrs. Hunsinger would then have to tend to premiums, and she would have a life insurance policy for her husband. Those were the only things that needed to occur. And the suicide exclusion wouldn't apply? The suicide exclusion, in our view, was waived. Even if she were to reinstate? Even if she were reinstated, the suicide exclusion would be waived. I don't quite know if I quite follow that reasoning. Our view is that there is a benefits claim in front of the Court for benefits, the sole issue of which is whether or not the policy was terminated. The Court, there is a breach of fiduciary duty claim seeking reinstatement of that policy. Once that policy is reinstated and reinstored, retroactive to the date, if she should have gotten it, the reason for denial of the claim is gone. That's our view. And Bowerman is consistent with that. Isn't that a pretty drastic remedy? You're asking to waive a provision of a policy that the carrier denies even exists? In other words, I can understand the argument if a carrier acknowledges a policy and then only states some of the grounds for denial of coverage, and then at a later point wants to raise new grounds, you could say it's too late. But in this case, the carrier or the plan administrator said there wasn't even any policy issue. So isn't it an inconsistent argument you're putting the plan administrator in? You have no policy. But if you had one, even though we say you don't have one, you have no coverage because of suicide exclusion. Obviously, I don't think it is because they initially made the decision based upon both those grounds. And, you know, for what our view of the administrative process was, we presented with them with evidence that the suicide exclusion didn't apply, and they accepted that. But isn't that part of the answer that you did, in fact, you had an opportunity to present evidence and it was part of the administrative record? It was. So how is OPTA really implicated? I mean, the evidence with respect to suicide was in the administrative record, so it wasn't really extrinsic or new evidence that was induced. There may have been a couple of things, like maybe her deposition in subsequent case, but that's irrelevant anyway to the real point of the suicide exclusion. If one looked at the administrative record, the conclusion one would draw is that Unum Provident agreed with us that if there was a suicide exclusion, it didn't apply. Where in the world does that come from? Because they made an initial denial. We responded with an appeal saying, you guys have a suicide exclusion on another policy, and you've already determined that the suicide exclusion doesn't apply to Mr. Hunsinger's death. That was our appeal of suicide. Well, I understand, but that's Judge Carney's point, that, I mean, the fact that they thought they had a dispositive answer. So what was the obligation to go beyond that and say, and besides, and besides, and besides? That may be a viable argument for why they should be able to raise the suicide exclusion if the court grants injunctive relief. I don't think it's a viable exclusion for why they should be able to, viable argument for why they should be able to litigate a reason that they abandoned, even if they thought that that was a viable, they had their viable reason to support denial. I might add that, you know, even in the context of this situation, Unum Provident's position in litigation and the position the court approved was that the suicide exclusion applied to benefits that, in the administrative process, Unum Provident claimed that it, or at least did not claim a suicide exclusion applied, and that's basic life benefits. The denial of basic life benefits wasn't because of any suicide exclusion. Well, I mean, okay, all right. I thought that the initial denial was based on that, wasn't at the appeals level. The initial denial distinguished between basic life benefits and optional. And the optional. I understand that. Basic life benefits were denied because of no policy in effect. Optional life benefits were denied because no policy in effect, and in addition because a suicide exclusion applied to those benefits. That was not raised as an issue with respect to basic life benefits. They raised no issue about a suicide exclusion applying to basic life benefits. We made the argument in the district court that the policy showed that there was no suicide exclusion in the basic life, converted basic life policy. The court did not address that. Third, I want to talk a little bit. I'd like to reserve a few minutes of my time for rebuttal. The thing I want to say about the bankruptcy issue is simply this. The breach of fiduciary duty issue makes a difference with respect to the bankruptcy court issues. In our view, the Shaw Group is the proper individual entity for injunctive relief relating to, a part of the injunctive relief relating to reinstatement of benefits. And so there are some issues relating to potential injunctive relief against Shaw, which effectively the court's injunction, even if it were viable, shouldn't be able to protect Shaw from because it's conduct after the date of the bankruptcy. With respect to conduct before the date of the bankruptcy, I think our position is relatively clear. American Hardwoods precludes this injunction under Moody. It wasn't a case involving successor liability. It was not a case involving successor liability. And it seems to be somewhat different. It is. There's no question that it's different. There is no Ninth Circuit case that I've been able to find on 363F and its relationship to 524E. At least not until today. And not until today. And I might also point out that the issues that are raised by the Fifth Circuit in Moody are very real here because had plaintiff had notice of this sale, she would have been entitled under the bankruptcy to file an objection and the court would have been required to condition the sale upon her ability to pursue her claim or to prohibit the sale entirely. So there is significant prejudice in applying a bankruptcy injunction against a person who was not notified of the sale. Thank you, Your Honor. Thank you. May it please the Court. Bill Patton for Defendant Appellee, Unum Provident Corporation. With me at council table is Dan Teamee of the Shaw Group. As a preliminary matter, I'd like to let the Court know that we'll be splitting our time this morning. I will first be addressing the suicide exclusion and any ERISA issues, and Mr. Teamee will be addressing the bankruptcy issue, which is unique to the Shaw Group. I would appreciate it if you would spend a little bit of time on the issue of the proper scope of de novo review. I mean, it's kind of ironical here. The sides are basically flipped from what they normally are. And I'm very concerned about an undue expansion of a district court's ability to simply retry an ERISA claim. And I think Alpeda pretty much says that's not proper. I mean, you can't do it except in limited circumstances. Yes. Let me first say, Your Honor, that the issue of whether or not the district court abuses discretion by allowing in additional evidence supplementing the administrative record is not an issue in this appeal. That's not a ground upon which the plaintiff appealed the district court's decision. The ground upon which he's appealing the decision is that we allegedly waived or abandoned the suicide exclusion. by not raising it in the final denial. Nowhere in the briefing does she mention the fact that the court abuses discretion by allowing in additional evidence. So that's point number one. Second of all, as Your Honor pointed out, yes, this is de novo review. And I think the Mongoluzo case is very clear that the court, in its discretion, may allow additional evidence if the court feels that that additional evidence is necessary for it to conduct its independent, fresh review of the record. And that's exactly what the court did in this case. And I think it's helpful to go back and look at how this case... We filed our motion for summary judgment very early in this case on the grounds that the suicide exclusions bar any claim that plaintiff could possibly make in this case. Plaintiff then filed a Rule 56-F motion asking the court to give her a large extension of time so she could conduct broad discovery. The court, based on Mongoluzo and over our objection, allowed that motion and allowed the plaintiff to conduct broad discovery, including depositions of claimspeople in Maine. And as a result, she submitted 328 pages in response to our motion for summary judgment. Prior to that, the administrative record was 207 pages. She more than doubled the administrative record. The court considered all of that evidence. We submitted some additional evidence showing that clearly Mr. Huntzinger committed suicide, and the court allowed plaintiff additional time to respond to that evidence. That's all proper under de novo review. That's proper under Mongoluzo. Now... So as I understand it, in the district, with that additional evidence, the district court judge was able to construct what a portable policy would have consisted of. Yes, although actually I don't think the judge needed additional evidence to determine what the portability policy would say. He needed evidence of what the suicide exclusion would have been. He did need evidence of what the conversion policy would have been. That was not in the administrative record. At the summary judgment stage, we produced the conversion policy that would have been issued if Mr. Huntzinger had exercised the conversion privilege under policy. That policy, that individual policy has a suicide exclusion. And she admitted that was the wording of that suicide exclusion? That's exactly right. In our concise statement of fact, we set forth that provision, and in response to that concise statement, the plaintiff admitted that that was the provision that would apply if Mr. Huntzinger had obtained an individual policy. Your voice. Did she admit the terms of the optional ported suicide exclusion? Yes, I don't think there's any dispute in the record that the portability policy, that the IT group policy has a suicide exclusion, and that I don't think there's any dispute in the record that that's what it is. What the wording of it is? Yes, and that provision provides that if death is due to suicide, while in saner and say no benefit will be payable for life insurance that started two years prior to death. So getting back to the issue of de novo review, and the issue of waiver or abandonment, I want to stress that we raised the fact of his suicide in our initial denial. Yes, it's not mentioned in the final denial, but the plaintiff had an opportunity to address it. She just didn't say much in response to... Let me ask you this, what's the final decision, the decision on appeal, or is it the initial decision that was appealed in December, standing by that decision? No coverage, because he hadn't converted to an individual policy, and he hadn't exercised the portability option. Is that the decision that the district court judge was reviewing? I think the district court's reviewing the actions of the administrator as a whole, and on de novo review, that review is very broad, and there's ample case law that supports the notion that the district court can even consider reasons that were never raised at the initial denial. And again, we raised it at the initial denial, and then the district court allowed ample evidence to supplement the administrative record. So the plaintiff can't complain that she's not had ample opportunity to address the suicide issue. She has. Even after oral argument on the motion for summary judgment, the court allowed, at plaintiff's request, allowed her to supplement the administrative record and address the suicide issue. So there's been no prejudice here, no denial of process by any stretch of the means. Where's the limitation on the district court judge's authority or discretion to expand the administrative record? Where do you draw the line? I think Mongaluzzo plainly says that the district court should exercise some respect for the administrative record, and I think that's restrained in supplementing the record, and do so only when it's necessary to conduct its independent review of the record, to exercise its independent judgment. I think those are almost the exact words that the court uses, and it's a flexible standard. The court has discretion to do it or not. OPEDA is an example of a case where the court exercised that discretion, but this court said it shouldn't have done it. But there are lots of other cases out there where the district court routinely allows in some additional evidence, and that's within its discretion to do so. And again, plaintiff fought hard to supplement the record here, and we fought against it, but the court, based on Mongaluzzo, said, I want this additional evidence so I can conduct my independent review. And I also want to point out this court's decision in Abatey, which is a very recent decision. In that case, the court considered a situation where the administrator did not raise, raised a new issue for denying the claim in its final denial. It hadn't been raised before. And this court said that that issue can still be considered on judicial review. If the plan provides discretion, that issue might just be reviewed de novo, or the fact that it wasn't raised until the final denial will be taken into account in deciding whether or not the administrator abused its discretion. But the point is, Abatey stands for the proposition that a new issue raised in a final denial for the first time can still be considered. Now, when it's raised in the final denial, the claimant doesn't have any opportunity to address it at the administrative level. But this court is saying, it's okay, you can still, the district court can still address that on judicial review. Here, the district court as I've said many times, we raised it at the initial denial level. She had an opportunity to respond to it. All she said in response was, I think your decision is inaccurate, period. Didn't really submit any additional records or talk about it in any depth. And it seems to me that if the court can consider an issue that's not raised until the final denial, a contrary rule that the court can consider an issue that's raised in the initial denial but not the final denial wouldn't make any sense. I also will address the breach of fiduciary duty claim since the plaintiff talked about that. In her claim, in her complaint, plaintiff alleges a claim under 29 U.S.C. 1109, which is the breach of fiduciary duty provision in ERISA. This court's decision in Sinelli is clear that a plaintiff cannot bring an action under that provision seeking individual relief. And that's what she's seeking here. So I think based on that reason alone, the district court's decision was correct. And backing up, let me say that the breach of fiduciary duty claim was plainly correct because of the suicide exclusions. Because plaintiff is saying that the breach of fiduciary duty caused the loss of her life insurance benefits, but the fact that both policies would have had suicide exclusions in them forecloses that. Plaintiff is now trying to recast her claim as a claim under a different section of ERISA, despite what her complaint says. She's now trying to say, well, I'm bringing this claim under 29 U.S.C. 1132A.3, which is the catch-all provision. I think the Supreme Court's decision in 2002 in Great West forecloses that. In that case, the court made it clear that when restitution is really seeking to impose personal liability on a defendant, that that's not equitable relief. That's legal relief. I mean, it may have the label of restitution, but it's equitable relief and it's not permissible under 1132A.3. And that's exactly what the plaintiff is trying to do here. She may say, well, I want them to convert the policies, but ultimately what she wants is the policy to be issued and for UNM to have to pay her almost $500,000 in life insurance benefits. So I think no matter how she tries to dress it up, it really is a claim for legal relief, which is not permissible. And with that. Okay. Thank you, Mr. Patton. Mr. Teemey. To please the Court, I'm Dan Teemey from Littler Mendelson representing the Shaw Group. I'd like to focus my remarks on the successor liability issues that are unique to the Shaw Group. The Shaw Group had nothing to do with the underlying facts related to this matter. Mr. Hunsinger was laid off by the IT group, the assets of which the Shaw Group later purchased in 2002. That is the time at which this policy was not put in place. I'm sorry, in 2000. In 2001, Mr. Hunsinger committed suicide. It was not until 2002, after the suicide had occurred, that the Shaw Group purchased these assets out of bankruptcy. So all the claims that the plaintiffs are asserting against the Shaw Group are based on Federal successorship law. There are two reasons why none of those claims can survive here. One relates to the bankruptcy issues, which I will address shortly. The other relates to the legal standard under the Federal successorship law for a claim of successorship liability to apply. Principally, the plaintiff's successorship claim is one that there was bad conduct by the IT group, and that is a claim the plaintiff asserts against the IT group and asserts that the Shaw Group steps into the IT group's shoes. The Ninth Circuit case law is very clear that to assert that kind of successorship claim to hold a plaintiff's claim against the seller, that the purchaser must have notice of the claim at the time the assets are purchased. There is no evidence in this record, the plaintiff produced no evidence and made no allegation of any notice to the Shaw Group of the existence of this claim prior to the Shaw Group's purchase of assets. Now, the plaintiff says two things about this in the plaintiff's reply brief. First, the plaintiff does not cite to the record for that proposition, and in fact, there was no Rule 56-F motion filed against the Shaw Group's motion for summary judgment. The plaintiff's Rule 56-F motion was filed against Unum's motion for summary judgment. And you will see if you look at the reply brief that there is no citation to the record because there was no Rule 56-F motion. Second, the plaintiff takes the position that because there was knowledge on the part, allegedly, on the part of individuals employed by the IT group, and that those individuals were subsequently employed by the Shaw Group, that that knowledge should be imputed to the Shaw Group. But there's no evidence that there was any transfer of that information to the Shaw Group at the time it was making the decision to purchase assets out of bankruptcy. And the Ninth Circuit case law is clear that the purpose of the notice requirement is to allow the buyer the opportunity to be aware of the claim and take that into account in determining the purchase price. There's absolutely no evidence in this record that the Shaw Group, prior to its closing of the sale, was in any way made aware of this claim. So there is no way under the Federal Successorship Doctrine that the successorship claim can be brought forward. The other aspect of the plaintiff's successorship claim involves the claim that the Shaw Group should be deemed to have had some fiduciary ERISA obligations after it acquired these assets. And the plaintiff claims that the Shaw Group itself violated ERISA by failing to assist the plaintiff after the Shaw Group purchased these assets. Now that would require a finding that merely by purchasing assets that a purchaser steps into a contractual and fiduciary obligation that was a creature of the IT groups of benefit plans. But it's well established in the collective bargaining context that an asset purchaser, when it purchases a company that has a union contract, may have some obligations in terms of bargaining with the union, but does not automatically step into the pre-existing contract. And we believe that's directly analogous to this situation, that there is nothing in Federal Successorship Doctrine that would indicate that merely because the Shaw Group purchased these assets that the Shaw Group took on and undertook contractual obligations to administer the IT group's benefit plans. And in fact, the plaintiff explicitly disclaimed having anything to do with the benefit plans. And the plaintiff's complaint against the Shaw Group is that the Shaw Group did nothing to administer the benefit plans, which in fact, it did nothing to administer the benefit plans. It never assumed the benefit plans. Now, district court didn't analyze or look at these arguments, right? It just cited solid text and said, I can't consider these. The district court did not consider the issue in its conclusions. However, we fully presented these arguments to the district court, and the district court's judgment can be affirmed on any basis properly presented by the record. So do you think the district court's decision to rely on solid text and saying, I don't have to look at these, this is an improper collateral attack on the bankruptcy order, is not valid? No, I think the district court correctly ruled on the bankruptcy issues. But I wish to address that even before getting into the thicket of bankruptcy law, that from our perspective, there's a clear basis to resolve these successorship claims just in terms of traditional federal successorship doctrine. Even if there was a potential federal successorship claim here, it's barred by the bankruptcy order. And we believe the court correctly ruled that, given that the bankruptcy order had a finding that there would be no successorship liability, and included an injunction against these kinds of cases, that this was an improper attempt at a collateral attack under solid text. One of the arguments the plaintiff makes is that this is really an improper discharge, but this is not a discharge of a liability. The plaintiff's argument is that this is a discharge of a liability. The discharge in the sense of Section 524 of the Bankruptcy Code involves individuals who have debts, and they come into court, and they have those debts taken away through relief from the discharge. This was a situation where the bankruptcy court said that a purchaser would not have claims sprung upon it by virtue of its purchase of these assets, and that this was discharged by the bankruptcy order. We also point you to the TWA case, the Third Circuit case, which also cites a Fourth Circuit case, both of which find that these kinds of bankruptcy orders allowing purchases of assets free and clear out of bankruptcy are fully supported by the provisions of the Bankruptcy Code. And, in fact, every case that we are aware of that addresses sales free and clear out of bankruptcy has upheld these kinds of orders. I see my time has almost expired, so unless the Court has further questions. I think so. Thank you. Thank you. Two or three things to respond to Mr. Patton's argument. Number one was the issue of the limitation on admission of evidence raised on appeal. The answer is yes. That's at page 19 of Plaintiff's opening brief, which states that if additional evidence is offered to address a new claim, the evidence should be rejected. If this were not the case, the limitation on new evidence would be meaningless. In this case, additional evidence was not necessary. Let me just ask you one question. Yes. Is it your point that the district court should not have considered any additional evidence? The district court should not, on the benefits claim, the district court should not have considered the evidence that Union Providence offered. There were other claims where evidence would have been admissible. For example, the breach of fiduciary duty claim, you know, on the questions of fiduciary duties and stuff like that. But on the benefits claim, the district court articulated no rationale. There is nothing in the record saying why additional evidence is necessary. And you submitted evidence on the benefits claim. In response to their motion for summary judgment, certainly we did. So your attack is on the initial decision to allow it at all? Your response is, well, we only did it because they did it. Well, sure. They filed a motion for summary judgment. A district court judge never should have allowed it in the beginning. Early in the case, we faced a motion to dismiss from Shaw, which was converted to a motion for summary judgment, followed by a motion for summary judgment, and a motion for summary judgment. Now, that motion was dismissed, not raised in the denial letter. We then said to the court, number one, this raises new issues. We're going to need discovery on this. Number two, we want you to defer consideration until discovery is complete. That wasn't done. We then had to respond. Our response was, we object, but, you know, if you decide you're going to admit evidence, here's our point of view. Okay. Thank you. I'd like to respond just real briefly to this issue of the conversion policy. We did agree that the conversion policy that would be offered to IT group employees would have a suicide exclusion clause. We did not agree that that applied to Mr. Hunsinger or Mrs. Hunsinger. Entirely different issue, because the policy did not allow Union Provident to offer a conversion policy with a suicide exclusion clause. The policy governed that, and that was our argument with the court. Made no difference what the new policy would have said. We'd have been entitled to a policy with no suicide exclusion, because that's what the contract said. Thank you. All right. Thank you, counsel, all of you. The matter just argued will be submitted, and we'll finally make our argument in Lanier v. City of Woodburn. Thank you.
judges: Rymer, Paez, Carney